**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAUHEDAH CRYOR,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **No. 21-cv-3255** |
| | : | |
| **THOMAS JEFFERSON UNIVERSITY** | : | |
| **HOSPITAL,** | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**MEMORANDUM OPINION**

Goldberg, J.                                                                    January 23, 2023

Plaintiff Tauhedah Cryor brings this action against Defendant Thomas Jefferson University Hospital under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Plaintiff claims that Defendant terminated her in retaliation for attempting to exercise her FMLA rights and interfered with her right to take leave under the FMLA. Defendant has moved to dismiss Plaintiff's Amended Complaint. For the following reasons, I will grant Defendant's Motion with leave to amend.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the Amended Complaint and will be viewed in the light most favorable to Plaintiff. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiff was hired by Defendant in December 2018. (Am. Compl. ¶ 9.) In late October, 2020, Plaintiff emailed her primary care physician, Dr. Bonat, about flu-like symptoms and told

Dr. Bonat that her husband had recently tested positive for COVID-19. (Id. ¶ 14.) Dr. Bonat met with Plaintiff over Zoom to discuss her symptoms, and instructed Plaintiff to undergo a COVID-19 test. (Id. ¶ 17.) Plaintiff went to Jefferson's Navy Yard COVID testing location and received a COVID-19 exam there. (Id. ¶ 18).

On November 2, 2020, Dr. Bonat called to inform Plaintiff that she had tested positive and instructed her to quarantine at home for 14 days. (Id. ¶ 18-20.) Plaintiff communicated her diagnosis to her supervisor that day. (Id. ¶ 21-22.) According to the Amended Complaint, Plaintiff was told that her job would not be held as a result of her taking time off for COVID. (Id. ¶ 24.) On or about November 11, 2020, Plaintiff informed Defendant that she was still experiencing COVID symptoms and would be unable to come to work. (Id. ¶ 29.) Plaintiff was terminated on or about the same day for calling in sick on a day that was not approved. (Id. ¶ 30.)

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. <u>Id.</u> <u>Twombly</u> and <u>Iqbal</u>'s plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." <u>Phillips v. Cty. Of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3)

"where there are well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

## III.   DISCUSSION

The FMLA entitles eligible employees to take up to 12 weeks of leave annually if they experience a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The parties disagree about whether Plaintiff has pled facts showing that she suffered a "serious health condition" as defined by the FMLA.

A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Department of Labor has promulgated a regulation defining "continuing treatment by a health care provider" to be, among several alternatives, "incapacity and treatment." 29 C.F.R. § 825.115(a). The Department of Labor's regulations interpreting the FMLA "must be given 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" Sommer v. Group, 461 F.3d 397, 399 n.2 (3d Cir. 2006) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984)). Plaintiff contends that her condition constituted "incapacity and treatment."

The Department of Labor has further defined "incapacity and treatment" as "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves":

(1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a). "Treatment by a health care provider," as used above, is defined as "an in-person visit to a health care provider." 29 C.F.R. § 825.115(a)(3). The term "treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition," but does not include "routine physical examinations, eye examinations, or dental examinations." 29 C.F.R. § 825.113(c). The term "extenuating circumstances" refers to circumstances "beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider." 29 C.F.R. § 825.115(a)(3). Finally, a regimen consisting solely of "activities that can be initiated without a visit to a health care provider" is not a "regimen of continuing treatment." 29 C.F.R. § 825.113(c).

### A.    Treatment Two or More Times

Plaintiff first argues that she satisfies "incapacity and treatment" under subsection 29 C.F.R. § 825.115(a)(1). Plaintiff offers two alternative bases for that conclusion. Plaintiff asserts that she received in-person treatment twice: the first was the video call with Dr. Bonat and the second was her COVID test at Jefferson's Navy Yard testing site. Plaintiff alternatively asserts that extenuating circumstances prevented her from receiving in-person treatment.

1.     <u>In-Person Visit</u>

Plaintiff argues that because she "had face-to-face, one-on-one communication with her doctor during the October 29, 2020 video call, this could be considered an 'in-person' visit with her doctor, even if Plaintiff did not physically enter her doctor's office." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 8 n.1.) Plaintiff posits that a video call is "in person," and thus she has alleged two instances of in-person treatment—the video call and the in-person COVID test she received at the Navy Yard site.

Plaintiff asserts that I should defer to a Department of Labor document titled "Field Assistance Bulletin" which states that telemedicine visits may be considered "in person" under some circumstances. <u>See</u> Field Assistance Bulletin No. 2020-8 (December 29, 2020). Field Assistance Bulletins are issued by the Department of Labor's Wage and Hour Division[1] to "provide [that Division's] investigators and staff with guidance on enforcement positions and clarification of policies or changes in policy." <u>See</u> <u>Schilling v. Schmidt Baking Co.</u>, No. 16-cv-2498, 2018 WL 3520432, at *5 (D. Md. July 20, 2018). This particular Field Assistance Bulletin states that the Department's Wage and Hour Division "will consider a telemedicine visit with a health care provider as an in-person visit under 29 C.F.R. § 825.115, provided specified criteria are met." Field Assistance Bulletin No. 2020-8 (December 29, 2020). Because this document was issued while briefing on Defendant's Motion was ongoing, I directed the parties to file supplementary briefs regarding the legal effect of the Department's statements on the meaning of "in-

---

[1] The Department of Labor's Wage and Hour Division administers the FMLA. <u>See</u> <u>Fact Sheet #28: The Family and Medical Leave Act</u>, Wage & Hour Div., U.S. Dep't of Lab. (2012) ("The Wage and Hour Division is responsible for administering and enforcing the FMLA for most employees."), https://www.dol.gov/agencies/whd/fact-sheets/28-fmla; 29 C.F.R. § 825.401(a) ("A complaint [of a violation of the FMLA] may be filed … with the Wage and Hour Division, U.S. Department of Labor.").

person," including what level of deference is owed to these statements and what reasons may exist to overcome such deference.

In Plaintiff's view, the Department's Field Bulletin is entitled to deference pursuant to Auer v. Robbins, 519 U.S. 452 (1997), which directs courts to defer to an agency's construction of its own regulation when certain criteria are met. Kisor v. Wilkie, 139 S. Ct. 2400, 2411 (2019). This deference is warranted only for regulations which are "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." Id.

Here, I conclude that Auer deference is not appropriate because the term "in-person visit to a health care provider" is not ambiguous. The first step in determining whether to apply Auer deference is to ask whether the regulation is genuinely ambiguous. Kisor, 139 S. Ct. at 2415. In doing so, the court must exhaust the "legal toolkit" of interpretation and "carefully consider the text, structure, history, and purpose of a regulation." Id. (internal quotation marks omitted). In this case, the term in question is "in-person visit," which unambiguously mandates physical presence with a healthcare provider.

Plaintiff nonetheless argues that the regulation is ambiguous because it does not use the phrase "in-office" visit or specify "physical" presence. Plaintiff also posits that the meaning of "in-person" has narrowed in response to the ubiquity of videoconferencing and that, at the time the regulation was enacted in 2008, "in person" denoted an interaction that was real-time and face-to-face, including over a video call.[2]

As to the first argument, the term "in-person visit" itself denotes physical presence, making the words "in-office" or "physical presence" unnecessary. See "in-person," Webster's II New Riverside University Dictionary (1984) ("Of or relating to the physical presence of a person or

---

[2] Plaintiff does not provide authority to support this proposition. (See Pl.'s Suppl. Br. at 9.)

subject"). As to the second argument, common usage before the COVID-19 pandemic reveals a clear distinction between "in-person" and video conferencing. See, e.g., Natasha Haverty, Video Calls Replace In-Person Visits in Some Jails, NPR (Dec. 2016) https://www.npr.org/2016/12/05/504458311/video-calls-replace-in-person-visits-in-some-jails; Christina Goldbaum, Videoconferencing in Immigration Court: High-Tech Solution or Rights Violation, N.Y. Times (Feb. 2019) ("[D]eportation proceedings of detained immigrants heard by videoconference were adjudicated more quickly … than those heard in person."), https://www.nytimes.com/2019/02/12/nyregion/immigration-court-video-teleconferencing.html; Daniel R. Stubbings, et al., Comparing In-Person to Videoconference-based Cognitive Behavioral Therapy for Mood and Anxiety Disorder: Randomized Controlled Trial, 15(11) Journal Med. Internet Rsch. (Nov. 2013).

Plaintiff further argues that the regulation's purpose demonstrates that "an in-person visit" is ambiguous because the regulation was intended to ensure that only employees with serious health conditions, as measured by their being examined, evaluated, or treated by a health care provider, are entitled to the FMLA's benefits. Plaintiff asserts that if employees can undergo the equivalent examinations, evaluations, or treatments by video conference, then video conferencing should be included under "in-person visit," and interpreting the regulation to exclude employees who received video conference treatment would defeat the purpose of the regulation and the FMLA. But the Department of Labor chose to implement the FMLA's purpose using particular language: "an in person visit." And I "must give effect to [the] plain meaning" of that regulation. Arcos Sanchez v. Att'y Gen., 997 F.3d 113, 119 (3d Cir. 2021).

Finally, Plaintiff argues in her supplemental brief that if "in-person" cannot include a video call, the regulation itself would not be controlling because it would be arbitrary and capricious. See Chevron, 467 U.S. at 844 ("Such legislative regulations are given controlling weight unless

7

they are arbitrary, capricious, or manifestly contrary to the statute."). Plaintiff contends that the regulation would be arbitrary and capricious because it would prevent employees with serious medical conditions from obtaining the FMLA's coverage simply because the pandemic prevented them from receiving in-office treatment. Plaintiff did not argue that the regulation was not controlling in her initial brief in opposition to Defendant's Motion to Dismiss, and this argument was outside the scope of my order for supplemental briefing. Moreover, Plaintiff's conclusory statement that distinguishing between in-office and remote treatment would be arbitrary and capricious is insufficient to overcome the apparent purpose of defining the medical conditions covered by the FMLA in clear terms that balance the needs of employees and employers. See 73 Fed. Reg. 67934, 67948 (Nov. 17, 2008) (discussing these competing concerns).

I therefore conclude that Auer deference does not apply to the Department of Labor's Field Assistance Bulletin. Because this deference is not warranted, I must determine whether deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), should be applied. Belt v. P.F. Chang's China Bistro, Inc., 401 F. Supp.3d 512, 529 (E.D. Pa. 2019) (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 159 (2012)). Under Skidmore, an agency interpretation may "may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." Sec'y of Labor v. Am. Future Sys., 873 F.3d 420, 427 (3d Cir. 2017).

The same reason for rejecting Auer deference also applies to Skidmore deference: the regulation is not ambiguous. Only after determining that a regulation is ambiguous does a court turn to agency interpretations. See Belt, 401 F. Supp. 3d at 529 ("If a regulation is ambiguous, a

court looks to whether the agency has advanced an interpretation of the regulation that warrants either <u>Auer</u> or <u>Skidmore</u> deference.").

I conclude that Plaintiff has not sufficiently alleged that she received "treatment" twice because the first treatment, a video call, was not "an in-person visit to a health care provider." 29 C.F.R. § 825.115(a)(3). The language of this regulation is unambiguous. As alleged by Plaintiff and based on applicable Department of Labor regulations, a video call is not "an in-person visit to a health care provider." If at some future point the Department of Labor determines that video calls should be included in the definition of "treatment by a healthcare provider," it is more appropriate for the Department to craft this amendment, not a court.

Therefore, Plaintiff has alleged only one in-person visit: her in-person COVID test. Because Plaintiff has not alleged two instances of treatment by a health care provider, Plaintiff's first basis for satisfying 29 C.F.R. § 825.115(a)(1) is insufficient.[3]

## 2.   Extenuating Circumstances

Plaintiff next contends that she satisfies "incapacity and treatment" under 29 C.F.R. § 825.115(a)(1) because extenuating circumstances prevented her from receiving in-person treatment. Specifically, Plaintiff asserts that both COVID safety protocols and her allegedly unlawful termination prevented her from receiving in-person treatment.

Assuming that COVID safety protocols and Plaintiff's termination are extenuating, they do not entitle Plaintiff to the protection of the FMLA because the regulation covers only those extenuating circumstances that prevent a follow-up visit "as planned by the health care provider." 29 C.F.R. § 825.115(a)(3). Plaintiff does not allege that a health care provider planned a follow-up visit that was subsequently prevented by COVID safety protocols or her termination.

---

[3] It is unnecessary for me to decide whether a COVID-19 test is a "treatment" for purposes of 29 C.F.R. § 825.113(c).

9

Plaintiff responds that "[a]bsent the extenuating circumstances presented by COVID-19 safety protocols, Plaintiff would have seen Dr. Bonat in-person" both to discuss her initial COVID symptoms and then to communicate her COVID test results. (Pl.'s Br. at 7.) But the Amended Complaint does not allege that Dr. Bonat planned an in-person visit that was then canceled. (Am. Compl. ¶ 17.)

Additionally, Plaintiff argues that if not for her termination, she would have undergone another treatment: namely, a second COVID test as required for her return to work. According to Plaintiff, therefore, her termination represents another extenuating circumstance. But there is no allegation that Plaintiff's termination prevented her from receiving a COVID test, only that it obviated the need for one. Further, the Amended Complaint does not allege that a second COVID test had been planned by a health care provider.

### B.    Continuing Treatment

Plaintiff finally argues that her COVID-19 infection qualifies as a serious health condition under 29 C.F.R. § 825.115(a)(2) because she received treatment on one occasion which resulted in a regimen of continuing treatment. That is, after her positive COVID-19 test, Plaintiff was instructed by her doctor to remain home and quarantine for 14 days. Subsection (a)(2) requires "a regimen of continuing treatment under the supervision of the health care provider." "[A]ctivities that can be initiated without a visit to a health care provider," by themselves, do not constitute a regimen of continuing treatment. 29 C.F.R. § 825.113(c). The Amended Complaint alleges that following Plaintiff's COVID test, she was instructed to remain home and quarantine for 14 days, which is not alleged to have required supervision or a visit to a health care provider. Therefore, Plaintiff's allegations do not satisfy 29 C.F.R. § 825.115(a)(2).

Accordingly, Plaintiff's allegations do not amount to "incapacity and treatment" under 29 C.F.R. § 825.115(a), and Plaintiff therefore has not alleged facts suggesting that she suffered a

"serious health condition" as defined by the FMLA. Plaintiff's claims under the FMLA must be dismissed.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." <u>Great W. Mining & Min. Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 174 (3d Cir. 2010). Because this is the first motion to dismiss, and because it is not apparent from the pleadings that Plaintiff cannot allege additional facts showing that her treatment would qualify under the FMLA, I will grant Plaintiff leave to file a second amended complaint that would entitle her to the protection of the FMLA, but only if she can in good faith allege sufficient facts.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Dismiss will be granted with leave to amend.

An appropriate order follows.

11