IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAUHEDAH CRYOR,<br><br>*Plaintiff*,<br><br>v.<br><br>THOMAS JEFFERSON UNIVERSITY HOSPITAL,<br><br>*Defendant.* | Civil Action<br><br>No. 21-cv-3255 |

MEMORANDUM OPINION

**GOLDBERG, J.**                                                                                       July 25, 2023

Plaintiff Tauhedah Cryor brings this action against Defendant Thomas Jefferson University Hospital under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Plaintiff claims that Defendant terminated her in retaliation for attempting to exercise her FMLA rights and interfered with her right to take leave under the FMLA. Defendant has moved to dismiss Plaintiff's Amended Complaint. For the following reasons, that motion will be denied.

**I.      FACTS**

The following facts are taken from Plaintiff's Second Amended Complaint:

– Plaintiff worked for Defendant from December 2018 until November 2020 in the position of "Patient Access IV." (Second Amended Complaint ¶¶ 10, 40.)

– During the week of October 21, 2020, Plaintiff began experiencing symptoms of COVID-19. Plaintiff emailed her primary care physician, Dr. Janis Bonat, who told Plaintiff that she should be tested and instructed her to schedule an appointment. (Id. ¶¶ 15-16, 19.)

– On or about October 29, 2020, Plaintiff saw Dr. Bonat over Zoom to discuss her symptoms. Dr. Bonat again instructed Plaintiff to take a COVID-19 test and informed her that her office "planned to reach out" once the results were in. Dr.

1

      Bonat was not seeing patients in person at the time due to the pandemic. (Id. ¶¶ 20-22.)

- The next day (October 30), Plaintiff took a COVID-19 test at Jefferson Hospital's Navy Yard location. Dr. Bonat called Plaintiff three days later to inform her that she tested positive for COVID-19. "During this call, Dr. Bonat evaluated Plaintiff's condition and symptoms and discussed treatment and care with Plaintiff," instructing her "to remain home and quarantine for 14 days." (Id. ¶¶ 24, 26-27.)

- According to Plaintiff, the COVID-19 pandemic "prevented [her] initial appointment with Dr. Bonat and Dr. Bonat's planned follow-up with [her] after she received her COVID-19 examination results from occurring physically in-person at Dr. Bonat's office." (Id. ¶ 28.)

- While Plaintiff quarantined, Dr. Bonat and nurses from Dr. Bonat's office called Plaintiff to monitor and evaluate her condition. The COVID-19 pandemic prevented these check-ins from occurring in Dr. Bonat's office. (Id. ¶¶ 32-33.)

- On November 2, 2020, Plaintiff informed Defendant of her positive COVID-19 test. Defendant informed Plaintiff that her job would not be held while she was out. Plaintiff accordingly used vacation and sick time to take off work while she was quarantined. (Id. ¶¶ 29-30, 34, 37.)

- On November 11, 2020, Defendant terminated Plaintiff's employment, stating that Plaintiff had called out sick on a day that was not approved. (Id. ¶ 40.)

## II. PROCEDURAL HISTORY

Plaintiff previously filed an Amended Complaint on November 12, 2021, and Defendant moved to dismiss that complaint on the ground that Plaintiff had not suffered a "serious health condition" as defined by the FMLA. I granted Defendant's motion after determining that Plaintiff had not alleged a serious health condition because she had not undergone two instances of "treatment," which the FMLA defined to mean "an in-person visit." I also concluded that Plaintiff had not alleged that "extenuating circumstances" prevented her treatment from occurring in person. Plaintiff was granted leave to further amend her complaint. (ECF No. 25.)

On February 6, 2023, Plaintiff filed her Second Amended Complaint. As relevant here, Plaintiff expanded her allegations to include that the COVID-19 pandemic prevented Dr. Bonat

2

from conducting certain appointments in person, including Plaintiff's initial appointment to discuss her symptoms, Plaintiff's follow-up appointment to discuss the results of her COVID-19 test, and check-ins from Dr. Bonat and nurses in Dr. Bonat's office while Plaintiff was quarantining.

On February 20, 2023, Defendant moved to dismiss Plaintiff's Second Amended Complaint. Defendant maintains that Plaintiff has not alleged a "serious health condition" as defined by the FMLA.

### III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

IV. **DISCUSSION**

　　A.　　**FMLA Interference**

Plaintiff first claims that Defendant interfered with her rights under the FMLA. The FMLA entitles eligible employees to take up to 12 weeks of leave annually if they experience a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The parties disagree about whether Plaintiff has pled facts showing that she suffered a "serious health condition."

The FMLA and associated regulations promulgated by the Department of Labor set out multiple ways for an employee to satisfy the requirement of showing a "serious health condition." The parties dispute several of those ways in their briefing, but for purposes of resolving the present motion to dismiss, it suffices to consider just one. A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves," among other possibilities, "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The phrase "continuing treatment by a healthcare provider," in turn, is defined to include "incapacity and treatment," 29 C.F.R. § 825.115(a), which is "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves," among other possibilities, "[t]reatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider." 29 C.F.R. § 825.115(a). "Treatment by a health care provider" is limited to "an in-person visit to a health care provider," 29 C.F.R. § 825.115(a)(3), and includes "examinations to determine if a serious

4

health condition exists and evaluations of the condition," but does not include "routine physical examinations, eye examinations, or dental examinations." 29 C.F.R. § 825.113(c).

In ruling on Defendant's prior motion to dismiss, I determined that Plaintiff had not alleged "[t]reatment two or more times" because she had alleged at most one "in-person visit to a health care provider," namely her COVID-19 test at Jefferson Hospital's Navy Yard location. All other alleged instances of treatment—such as Plaintiff's Zoom call and phone calls with Dr. Borat and her staff—were done remotely. Plaintiff does not dispute that her Second Amended Complaint continues to allege only a single instance of in-person treatment. However, Plaintiff contends that she meets the exception for "extenuating circumstances" because the COVID-19 pandemic prevented her from receiving additional in-person treatment.

"Extenuating circumstances" are defined as follows:

> The term extenuating circumstances … means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period.

29 CFR § 825.115(a)(5).

The parties' disagreement on "extenuating circumstances" centers on the meaning of the word "planned" in the above definition. In Defendant's view, a "plan" is a "formulation of a program of action." (Motion at 8 (quoting Merriam-Webster, https://www.merriam-webster.com/dictionary/plan (last visited February 15, 2023)).) Thus Defendant maintains that unless Dr. Borat scheduled an in-person visit and subsequently canceled it, an in-person visit was not "planned," and the definition of extenuating circumstances is not met. Plaintiff disagrees and asserts that "planned" has a more expansive definition that includes an in-person visit that was desired but not necessarily scheduled for a particular date and time. In Plaintiff's view, "planned"

5

has a meaning similar to "intended," such that extenuating circumstances would be satisfied if the health care provider intended a second visit but was prevented from holding one in-person due to circumstances beyond the employee's control.

A regulation should be interpreted based on its "text, structure, history, and purpose." Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019). Dictionary definitions for "plan" as a transitive verb could support either party's interpretation. Merriam-Webster defines the word to mean either "to devise or project the realization or achievement of" (which would support Defendant's interpretation) or "to have in mind" (which would support Plaintiff's interpretation). See Merriam-Webster, "plan," https://www.merriam-webster.com/dictionary/plan. Thus, the word "planned" standing alone does not resolve whether Dr. Borat's determination to follow up with Plaintiff after her COVID-19 test qualifies as a "follow-up visit … planned by [a] health care provider."

However, the example of an extenuating circumstance given in the regulation makes clear that the broader definition of "planned" is the correct one. "[E]xtenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period." 28 C.F.R. § 825.115(a)(5). In such a scenario, the health care provider would not schedule an in-person visit, yet the regulation defines this to be an extenuating circumstance. Thus, I conclude that "planned" in the regulation encompasses situations in which the health care provider determines that additional treatment is necessary but circumstances beyond the employee's control prevent that additional treatment from occurring, even if a follow-up visit is not formally scheduled and canceled.

I also agree with Plaintiff that the more general definition of "planned" fits with the regulation's "history[] and purpose." Kisor, 139 S. Ct. at 2415. The limiting clause "as planned by

a health care provider" "clarif[ies] that the health care provider, and not the employee or the patient, must make the determination as to whether a second visit during the 30-day period is needed." 73 FR 67934-01 (November 17, 2008). To serve this purpose, it is unnecessary that the health care provider formally schedule and then cancel an appointment—so long as the decision to perform additional treatment rests with the health care provider and not with the employee.

Defendant argues that my prior opinion resolved the meaning of "planned" in its favor by finding that "the Amended Complaint does not allege that Dr. Bonat <u>planned</u> an in-person visit that was <u>then canceled</u>." (ECF No. 25 at 10, first emphasis in original, second emphasis added.) However, the meaning of "planned" was not put at issue in the prior motion to dismiss because Plaintiff's prior complaint lacked allegations that the pandemic "prevented" her appointments with Dr. Bonat from occurring in person. My prior opinion accordingly did not decide that extenuating circumstances require the scheduling of an in-person appointment.

Applying a definition of "planned" that requires the health care provider to decide that treatment is necessary but does not require the formal scheduling of an appointment, Plaintiff's Second Amended Complaint plausibly alleges extenuating circumstances. According to Plaintiff's allegations, Dr. Bonat "planned" to discuss Plaintiff's COVID-19 test results with Plaintiff and, as part of that discussion, "evaluated Plaintiff's condition and symptoms and discussed treatment and care with Plaintiff." (Second Amended Complaint ¶¶ 21, 26.) But restrictions associated with the pandemic "prevented" Dr. Bonat from conducting these activities in person. (<u>Id.</u> ¶ 28.) Plaintiff has thus alleged that Dr. Bonat "planned" an "evaluation[] of [Plaintiff's] condition," but "circumstances beyond [Plaintiff's] control … prevent[ed] [a] follow-up visit from occurring as planned by" Dr. Bonat. 29 C.F.R. §§ 825.113(a), 825.115(a)(5). This is sufficient to allege a

7

serious health condition. Whether Plaintiff in fact suffered a serious health condition remains an issue for factual development.

I will therefore deny Defendant's motion to dismiss as to Plaintiff's FMLA interference claim.

### B.     FMLA Retaliation

Plaintiff additionally claims that Defendant retaliated against her for exercising her right under the FMLA to take leave. The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). To make out a claim for retaliation under the FMLA, an employee must allege that her employer "'discriminat[ed] or retaliate[ed] against [her] for having exercised or attempted to exercise FMLA rights.'" Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014) (quoting 29 C.F.R. § 825.220(c)).

Defendant first contends that Plaintiff's retaliation claim should be dismissed for the same reason as her interference claim—namely that Plaintiff did not suffer a "serious health condition" and thus was not entitled to take leave under the FMLA. For the reasons stated above, Plaintiff has plausibly alleged that she had a serious health condition.

Defendant alternatively contends that Plaintiff could not have attempted to exercise her FMLA rights because Plaintiff was admittedly unaware that she had rights under the FMLA. "To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012). "In doing so, the employee need not expressly assert rights under the FMLA or even mention the FMLA." Id. Here, Plaintiff alleges that she was entitled to take leave under the FMLA,

8

that she requested to take leave, and that she was fired for doing so. These allegations are sufficient to state a claim for FMLA retaliation.

V. **CONCLUSION**

For the reasons set out above, Defendant's motion to dismiss will be denied.[1]

An appropriate order follows.

---

[1] Plaintiff's brief in opposition to the motion to dismiss suggests that she could further amend her complaint to add a state-law claim that her firing violated public policy. (Response at 18.) Because Plaintiff's FMLA claims are not being dismissed and Plaintiff has not sought leave to amend her complaint to add additional claims, I will not decide whether further amendment would be appropriate.